1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOHN J. SIMMS, et al.,

                                    Plaintiffs,

          v.

NAVIENT SOLUTIONS, INC.,

                                    Defendant.

Case No. 2:15-cv-01808-GMN-PAL

ORDER

(Mot Compel Arb – Dkt. #7)
(Mot Strike Affidavit – (Dkt. #15)

        Before the court is Defendant Navient Solutions, Inc.'s ("NSI") Motion to Compel Arbitration and Stay Proceedings (Dkt. #7). The court has considered the motion, Plaintiffs' Opposition (Dkt. #9), Defendant's Reply (Dkt. #12), Defendant's Supplemental Affidavit (Dkt. #13), Plaintiffs' Notice of Objection and Motion to Strike Supplemental Declaration (Dkt. #15), and Defendant's Response to Plaintiffs' Notice of Objection and Motion to Strike Supplemental Declaration (Dkt. #17). The court heard oral argument on the motion on December 15, 2015, and took the matter under advisement to review the Supreme Court's most recent decision applying the Federal Arbitration Act, and to issue a written order. David Krieger appeared on behalf of the Plaintiffs, and Matthew Knepper appeared on behalf of the Defendant.

## BACKGROUND

        The Complaint (Dkt. #1) was filed September 21, 2015, and an Amended Complaint (Dkt. #6) was filed October 6, 2015. The amended complaint asserts claims for violations of the Fair Debt Collections Practices Act ("FDCPA") NRS 598 and NRS 41.600, and violations of the Telephone Consumer Protection Act ("TCPA"). The amended complaint asserts that Defendant NSI is doing business in the State of Nevada and is a debt collector as the term is defined by 15 U.S.C. § 1692a(a)(6). Plaintiffs claim that NSI engaged in illegal conduct by making harassing phone calls and contacting the Plaintiffs to collect a promissory note to finance an online education program in which Plaintiff Sherry Simms enrolled. The amended complaint alleges

that beginning in January 2015, NSI began communicating with Plaintiffs in an attempt to collect a debt. Plaintiffs instructed NSI to cease and desist all communications, but the communications persisted. Plaintiffs retained counsel who also instructed NSI to cease and desist, however, the communications persisted. Plaintiffs were harassed by multiple phone calls a day, sometimes before 8:00 a.m., or after 9:00 p.m. Plaintiffs retained new counsel who also instructed NSI to cease and desist communicating with the Plaintiffs. Counsel for Plaintiffs eventually brought this lawsuit when NSI continued to engage in unlawful harassing conduct to collect the debt.

NSI has not filed an answer or Rule 12(b) motion, but filed this Motion to Compel Arbitration and Stay Proceedings (Dkt. #7) on November 2, 2015, as its first appearance. The motion to compel alleges that on October 4, 2001, Sherry J. Simms as borrower, and John J. Simms as co-borrower, signed an SLM Financial Corporation educational loan program application. A copy of the application is attached as Exhibit 1. On August 30, 2012, the Simms signed an SLM Financial Corporation educational loan program repayment schedule and truth in lending disclosure with respect to this loan application. A promissory note was signed the same day. NSI's records reflect that the loan was disbursed September 11, 2002, to Plaintiffs' chosen educational institution, the Academy of Tampa, on their behalf in the principal amount of $15,588. NSI services the loan on behalf of its current holder.

According to the motion and supporting Affidavit of Lori Ungvarsky, the promissory note contains an arbitration provision which reads, in part,

> Arbitration Disclosure: By applying for a loan with you, I agree that, if a dispute arises with respect to this Note or my application for a loan either you, I, or third parties involved in a dispute with you can choose to have that dispute resolved by binding arbitration as described under "Arbitration Provision" below.
> . . .
> Arbitration Provision:
> The provision covers any claim, dispute or controversy (whether in contract, regulatory, tort or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to this Note or my application for a loan . . . . (collectively, a "Claim"). Any dispute concerning a Claim shall be resolved, upon the election of you, or us or any third party, by binding arbitration under the applicable code of civil procedure (as in effect at the time the Claim is filed) of the Arbitration Administrator I select as provided above.

2

The motion alleges that the arbitration agreement allows Plaintiffs the right to choose whether arbitration will proceed with the American Arbitration Association or JAMS.  Plaintiffs signed the note with the arbitration provision in it and did not send any notices of rejection.  Accordingly, NSI seeks to compel arbitration under the Federal Arbitration Act ("FAA").  NSI claims that the FAA governs the parties' arbitration agreement because it was made pursuant to transactions involving interstate commerce which are governed by the FAA.  NSI asserts the arbitration clause is valid and applies to Plaintiffs' claims.  It requests that the court compel arbitration and stay this lawsuit pending arbitration.

Lori Ungvarsky submitted an affidavit in support of the motion to compel.  Ms. Ungvarsky avers that she is eighteen years of age and competent to testify about information based in the affidavit on her personal knowledge.  Affidavit (Dkt. #7-1) ¶1.  She is employed by NSI as a customer advocate and is familiar with the record keeping and policies of NSI.  *Id.* ¶2.  She claims to have "personal knowledge upon my review of the records of NSI of which I am a joint custodian, which are maintained in the ordinary course of business. . . ."  *Id.* ¶2.  NSI is engaged in the business of servicing student loans and in the course of its business may take actions to collect repayment of those loans.  *Id.* ¶3.  She is familiar with the student loan of Mr. and Mrs. Simms which is serviced by NSI.  *Id.* ¶4.  The Simms signed the loan application October 4, 2001.  *Id.* ¶5.  A copy of the application is attached as Exhibit A to the declaration.  On August 30, 2002, the Plaintiffs signed a repayment schedule and truth in lending disclosure which is attached as Exhibit B to the declaration.  *Id.* ¶6.  The Simms also signed a promissory note August 30, 2002, a copy of which is attached as Exhibit C.  *Id.* ¶7.

NSI's records reflect that the educational loan was disbursed September 11, 2002, to Plaintiffs' chosen educational institution in the original principal amount of $15,588.  *Id.* ¶8.  NSI services the loan on behalf of its current holder.  The promissory note provides that the words "I, me, my, and mine" mean the borrower and co-borrower(s) unless language specifically refers to only one or the other.  "You, your, and yours" means the lender, its agents, and any subsequent holder of this note and the agents of any such persons.  *Id.* ¶9.  The note contains an arbitration agreement which is quoted in relevant part.  *Id.* ¶10.  Based on her review of the

1    business records maintained by NSI "with respect to Plaintiffs' account" no rejection notice was

2    ever received from Plaintiffs or anyone acting on their behalf with respect to the arbitration

3    agreement contained within the note. *Id.* ¶11.

4        Plaintiffs oppose the motion acknowledging that in 2001 Mrs. Simms enrolled in an

5    online education program.  Plaintiffs applied for a loan with the program with SLM Financial,

6    and signed a promissory note August 30, 2002, with SLM Financial.  However, Mrs. Simms was

7    not provided an opportunity to modify the note or the clauses in it and was offered the Note on a

8    take-it-or-leave-it basis.  After enrolling in the program, the program failed to provide Mrs.

9    Simms with necessary books or materials and, as such, she opted out of the online program.

10   Mrs. Simms expected that the debt would not be pursued by SLM Financial.

11       Plaintiffs sued NSI after it engaged in relentless collection efforts on the Note. The court

12   should deny the motion to compel arbitration because NSI is not a party or a signatory to the

13   promissory note and has failed to provide any proof of any assignment of a right to collect the

14   Note.  The response is supported by the declaration of both Plaintiffs who aver that during the

15   loan application process and execution of the Note, Plaintiffs were not informed of the

16   arbitration provision by the education program or SLM Financial.  Plaintiffs aver that they were

17   not provided with a meaningful opportunity to opt out of arbitration.  Plaintiffs also assert the

18   arbitration clause was included in extremely small print on the bottom of page 6 of the Note, and

19   that it was only after Defendant's motion to compel was filed that Plaintiffs first reviewed the

20   clause.

21       Plaintiffs attest that they never intended to arbitrate disputes with SLM Financial or any

22   subsequent debt collector such as NSI.  Plaintiffs argue that NSI has "flatly failed to provide any

23   meaningful evidence that it is entitled to enforce the arbitration clause even if the court

24   determines that it is enforceable.  Plaintiffs contend NSI lacks standing to enforce the arbitration

25   clause, that the arbitration clause is procedurally and substantively unconscionable, and therefore

26   unenforceable.  Plaintiffs also argue that claims in this lawsuit are not covered by the arbitration

27   agreement and are unrelated to the Note.  Plaintiffs have asserted violations of state and federal

28   law for NSI's debt collection practices.  The underlying claims in the complaint do not involve

the Note origination or loan application, and this lawsuit was filed as a result of NSI's violation of a legal duty independent of its contractual duty and underlying Note.  As a result, NSI's actions do not fall within the scope of the arbitration agreement.  Finally, the documents NSI offered in support of its motion to compel are inadmissible hearsay.

NSI replies that it has standing to compel arbitration as an agent of the current Note holder and because the Simms' claims arise from their relationship with NSI, who is their loan servicer.  NSI has standing because the loan does not limit who may invoke the arbitration clause to signatories or assignees.  Rather, the Note allows the lender, its agents and any subsequent holder of the note and agents of such persons to demand arbitration.  NSI submitted a supplemental declaration of Ms. Ungvarsky which it asserts has clarified its services and the specific loan evidenced by the loan on behalf of the current holder, and that it is an agent of the note holder.

Plaintiff filed a notice of objection and a motion to strike Ms. Ungvarsky's supplemental affidavit to preserve evidentiary objections pursuant to Fed. R. Civ. P. 56(c)(2), citing *Pfinston v. Ronan Eng'g Co.*, 284 F.3d 999, 103 (9th Cir. 2002).  The objection objects to new evidence asserted in the reply brief through a supplemental affidavit of Ms. Ungvarsky.  The supplemental affidavit was filed to introduce evidence authenticating documents in the original motion, but still fails to do so.  The court should strike the new evidence and its assertions as arguments raised for the first time in a reply brief are waived.  NSI had the burden of proving that it had the right to enforce the arbitration clause when it filed its original motion.  It failed to produce admissible evidence demonstrating an assignment of rights from SLM Corporation to it, and to authenticate documents that it attempted to introduce.  The supplemental affidavit contains new conclusions and analysis of the documents NSI introduced in its original motion to compel, and makes other unsubstantiated assertions.  NSI has not explained why the new information in the supplemental affidavit was not presented before, or offered any facts showing that this is an exceptional case.  The court should therefore strike the affidavit in its entirety.

NSI filed a response to Plaintiff's notice of objection and motion to strike which points out that the Plaintiffs do not dispute that they signed the Note, that NSI services their Note, or

5

that a copy of the Note attached to Ms. Ungvarsky's affidavit is inaccurate. The supplemental affidavit was obtained because Plaintiffs' response to the motion to compel claimed the attached exhibits were insufficiently authenticated and inadmissible hearsay. The supplement affidavit addresses Plaintiffs' specific concerns, and now Plaintiffs complain that NSI improperly presented new evidence in its reply. Ms. Ungvarsky's supplemental affidavit merely clarifies her prior affidavit and any prejudice by the supplemental affidavit can be cured through further briefing or a continuance.

## **DISCUSSION**

### I.      **Applicable Law**

Congress enacted the FAA in 1925 to overcome judicial resistance to arbitration. *A.T. & T. Mobility, LLC v. Concepcion,* 563 U.S. 333, 131 S.Ct. 1740, 1744 (2011) (citing *Hall Street Associates, L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 581 (2008)); *Buckeye Check Cashing, Inc., v. Cardegna,* 526 U.S. 440, 441 (2006). In doing so, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984). Because the FAA creates a strong presumption in favor of enforcing arbitration agreements, the Supreme Court has stated that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226–27 (1987) (arbitration agreements should be rigorously enforced); *Moses H. Cone Mem'l Hosp* 460 U.S. 1, 24–25 (1983) (federal policy favors arbitration).

Section 2 of the FAA is the "primary substantive provision of the act." *Concepcion,* 131 S.Ct. at 1745 (citing *Moses H. Cone,* 460 U.S. at 24). It provides, in relevant part, as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The Supreme Court has described this provision as reflecting a "liberal federal policy favoring arbitration."  Section 2 also reflects the "fundamental principle that arbitration is a matter of contract."  *Id.*  (citing *Rent–A–Center, West, Inc. v. Jackson,* 561 U.S. 63, 130 S.Ct. 2772, 2776 (2010).  Consistent with these principles, courts must place arbitration agreements on an equal footing with other contracts.  *Id.*  (citing *Buckeye Check Cashing,* 546 U.S. at 400, 443).  Arbitration agreements must be enforced according to their terms.  *Id.*  (citing *Volt Information Sciences, Inc. v. Board of Trustees of Leland Sanford Jr ., Univ.,* 489 U.S. 468, 478, (1989)).

The Supreme Court has recognized only two limitations on the enforceability of arbitration provisions governed by the FAA.  First, they must be part of a written maritime contract or contract "evidencing a transaction involving commerce."  Second, arbitration clauses may be revoked only upon "grounds as exist at law or inequity for the revocation of any contract."  *Id.* at 11.

Under the FAA a written provision in a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.  9 U.S.C. §§ 2, 3.  Courts have generally referred to this language as the savings clause. It permits courts to invalidate arbitration agreements using "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Concepcion,* at 1746 (citing *Doctors Associates, Inc.* 517 U.S. at 687).

The savings clause preserves generally applicable contract defenses, not only those that apply to arbitration agreements. State law rules that prohibit arbitration of a particular type of claim are preempted by the FAA.  *Id.* at 1747.  State rules that are inconsistent with the FAA are also preempted.  *Id.* at 1747–48.  State rules that stand as an obstacle to the accomplishment of the FAA's goals are preempted.  *Id.*  State rules that have a disproportionate impact on arbitration are also preempted by the FAA.  *Id.* at 1747.  The Supreme Court has found that state rules classifying provisions in arbitration agreements unconscionable that do not abide by the Federal

Rules of Evidence, disallow jury trial, or require exhaustion of administrative remedies have a disproportionate impact on arbitration are preempted.  *Id.*

Nevada law also recognizes that "strong public policy favors arbitration because arbitration generally avoids the higher costs and longer time periods associated with traditional litigation."  *D.R. Horton v. Green,* 96 P.3d 1159, 1162 (Nev.2002).  Under Nevada law, a contract provision is unenforceable due to unconscionability only if it is both procedurally and substantively unconscionable.  *Id.*  The party opposing arbitration has the burden of showing the arbitration agreement is both procedurally and substantively unconscionable.  *Id.* An arbitration clause is procedurally unconscionable under Nevada law when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract.  *Id.* at 1162.  Substantive unconscionability "focuses on the one-sidedness of the contract terms."  *Id.* at 1162–63.  The Nevada Supreme Court applies a sliding scale in evaluating whether both procedural and substantive unconscionability invalidate an arbitration clause.  Less evidence of substantive unconscionability is required in cases involving great procedural unconscionability.  *Id,* at 1162.  The reverse is also true. Less evidence of procedural unconscionability is required in cases involving great substantive unconscionability.  *Gonski,* 245 P.3d at 1169.

Plaintiffs do not dispute that they signed the agreements containing the arbitration clauses at issue in this case.  Plaintiffs do not dispute that the documents evidence a transaction involving commerce.  Rather, Plaintiffs argue the arbitration provisions are not valid and enforceable because NSI has not met its burden of showing it has standing, or that it is an authorized agent of the original lender or subsequent holder of the note.  It is undisputed that NSA is not a signatory to the documents containing the arbitration clauses.

## II.     Analysis and Decision

As a general rule, a non-party to an arbitration agreement is not bound by the arbitration agreement, and does not have the right to enforce an arbitration agreement.  *See Equal Employment Opportunity Comm'n, Inc.,* 534 U.S. 279, 294 (2002).  It is undisputed that NSI is

not a signatory to the agreement containing the arbitration provisions.  Rather NSI claims it may enforce the arbitration provisions because it is a loan servicer for the current holder of the note and therefore an agent as defined in the arbitration clause.

The Ninth Circuit has held that a non-signatory to an arbitration agreement may be bound by the agreement under traditional "principles of contract and agency law." *Letizia v. Prudential Bache Secur., Inc.* 802 F.2d 1185, 1187 (9th Cir. 1996).  The Ninth Circuit has held that ordinary contract and agency principles that may apply to non-signatories include: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006).  There are two lines of cases which apply to non-signatories.  *Id.*  Under the first line of cases, non-signatories have been compelled to arbitrate where the non-signatory "knowingly exploits the agreement containing the arbitration clause despite never having signed the agreement."  *Id.* (Internal citations omitted.)  This line of cases has no application to the parties' current dispute.  Under the second line of cases, signatories may be compelled to arbitrate claims brought by non-signatories "at the non-signatory's insistence because of the close relationship between the entities involved."  *Id.*  In *Comer*, the Ninth Circuit held that an ERISA participant was not bound by an arbitration clause in an investment management contract between the employer and the investment manager of an employee pension plan.

Here, the parties' disputes arise out of the loan and supporting note.  It is undisputed that Plaintiffs signed the agreements containing the arbitration disclosure and arbitration provision.  Plaintiffs' affidavits attest to that fact.  Plaintiffs have sued NSI as a debt collector for violations of statutory duty.  It is well established that the courts have a duty to enforce arbitration clauses which raise statutory rights.  *See, e.g., Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (enforcing agreement to arbitrate claims arising from the Securities Act of 1933 and stating that prior decisions holding such clause as unenforceable contrary to the strong federal policy compelling arbitration under the FAA).  The parties' current disputes clearly arise out of the note containing the arbitration clauses.

1    However, the court finds that NSI has not met its burden of establishing that it is an

2    agent of SLM Financial Corporation or the current holder of the Note authorized to demand

3    arbitration of the parties' dispute.  NSI has not presented any evidence at all that it is the agent of

4    SLM or the current holder of the Note.  It has not even identified the current holder of the Note.

5    It has provided no evidence of any contract or agreement establishing its agency or authority.  It

6    has not even described the scope of its authority as a loan servicer to the unidentified current

7    holder of the Note.  Rather, it merely refers to itself as a loan servicer. At most, Ms. Ungvarsky's

8    affidavit attests that NSI is engaged in business of servicing student loans, and in the course of its

9    business, may take actions to collect repayment of those loans.  The court fully appreciates the

10   strong federal and state policy of rigorously enforcing arbitration agreements according to their

11   terms.  However, NSI's unsupported statements that it is a loan servicer and therefore an agent of

12   a successor holder of the note are insufficient for the court to conclude NSI is an agent entitled to

13   enforce the arbitration clause in the agreements at issue.

14   Because the court finds NSI has not met its burden of establishing that it is an agent of

15   SLM Financial or a successor to SLM Financial, the court need not address Plaintiffs' remaining

16   arguments with respect to the enforceability of the arbitration provision at issue.

17   For the reasons stated,

18   **IT IS ORDERED** that:

19   1.  NSI's Motion to Compel Arbitration (Dkt. #7) is **DENIED**.

20   2.  Plaintiffs' Motion to Strike Affidavit (Dkt. #15) is **DENIED.**

21   3.  NSI shall have until **February 3, 2016**, to file an answer.

22   DATED this 20th day of January, 2016.

24   _____
     PEGGY A. LEEN
25   UNITED STATES MAGISTRATE JUDGE